UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **PRISCILA FERREIRA d/b/a DEPRIS INC.,** | ) ) ) | Case No. _____ |
| Petitioner, | ) ) ) | |
| v. | ) ) ) | |
| **JAIMEE MUÑOZ** | ) ) ) | |
| Defendant. | ) | |

**DECLARATION OF PRISCILA FERREIRA IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

I, Priscila Ferreira, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and the owner of DePris Inc., with my principal place of business in Webster, Massachusetts. I am over the age of 18, competent to testify, and have personal knowledge of the facts stated herein. If called as a witness, I could and would testify competently to these matters.

2. This declaration is submitted in support of Plaintiff's Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction to prevent further irreparable harm from Defendant Jaimee Muñoz's unauthorized use of the Glow-Unique brand, misappropriation of assets and funds, and defamation.

3. In April 2024, Defendant contacted me via text messages inquiring about pricing for some of my products. She had an informal 50/50 business partnership with a third party,

Jenny, and together they had launched a Discord community called SBB. There was no formal written operating agreement for this partnership or the subsequent Glow-Unique LLC.

4. Conflicts arose in late 2024. Around November 2024, Defendant traveled to Mexico for the winter, as she typically does. During this period, she had a consistent pattern of leaving after holidays and spending winter months in Mexico with her husband, who owns and operates a traveling bus. Jenny felt overburdened with the workload, leading to a revision of the profit split to 80/20 in Jenny's favor. While in Mexico, Defendant and I communicated daily by phone and text, during which she often discussed her ongoing challenges with SBB.

5. In December 2024, encouraged by Deb, I operated my pre-existing Aging Backwards Glow channel, which I had independently built and grown with an active skincare community. On March 14, 2025, Deb and I became full partners and established DePris. Upon Defendant's return from Mexico in early 2025, following her separation from SBB and Jenny, we collaborated on launching Glow-Unique. At that time, Defendant assisted with my Aging Backwards Glow channel in connection with DePris, and I directed customers to her for drop-ship orders until the Glow-Unique server was operational. Defendant created the server, with my assistance, in mid-April to early May 2025. From December 2024 to March 2025, while Defendant was absent in Mexico and uninvolved, I alone directed customers and community members from that channel to the Glow-Unique server. Glow-Unique was not fully established until after her return, and the corporate application for Glow-Unique LLC was filed on July 25, 2025.

6. I solely created and funded the Glow-Unique brand assets, including the name, logo, tagline, website content, graphics, product descriptions, and Discord community assets such as emojis, glow badges, and banners. I personally invested over $50,335 in verified hard costs for the business, including product purchases from vendors like Heal Link Korea, Korestetics Global Ltd., and Ibragimov Botir Bak-Htiyarovich, as evidenced by Wise transfer statements and invoices. For example, on August 4, 2025, I sent $4,492.00 to Heal Link Korea; on April 29, 2025, $4,466.19 to Korestetics Global Ltd.; and on April 29, 2025, $4,492.36 to Ibragimov Botir Bak-Htiyarovich. These were funded from my personal and DePris business accounts, with no contributions from Defendant. I also own the website hosting and Jotform account where customer emails were collected

7. Defendant has mishandled business assets, including destroying and unauthorized modification of my website and related digital assets that I paid for and developed; unauthorized access to and use of business accounts and data, including Jotform materials; withholding of physical inventory and products purchased with my funds; and misappropriation of nearly six figures' worth of funds from the business bank account. I was deliberately removed from access to the business bank account and payment processors, preventing me from viewing transactions. Based on records, there have been recent deposits including $5,212.00 on October 26, 2025; $199.55 on October 27, 2025; and $618.91 in transit, in addition to prior sales totaling approximately $60,000, with $3,000 held in savings.

8. On October 28, 2025, I sent Defendant a Notice of Intent to Pursue Legal Action via email, WhatsApp, Discord, text message, and certified mail. On November 2, 2025, I sent a Cease-and-Desist letter via certified mail (received November 10, 2025) and email,

demanding immediate cessation of brand use, removal of assets, stop of unauthorized sales, cessation of bank access, protection of my reputation, and confirmation of compliance within 7 business days (expiring November 21, 2025). Defendant has partially complied by removing emojis and the logo but continues side sales of inventory I paid for and is building a new website using the original Glow-Unique LLC name, for which I completed the paperwork and have not been reimbursed. She has not provided an accounting of inventory or bank activity, nor retracted defamatory statements..

9. Defendant posted defamatory statements in the Discord community implying that my DePris Beauty business is impersonating or misleading Glow-Unique customers, which is false and damaging to my reputation. My announcement email to my verified customer list (from Jotform) was professional, transparent, and did not claim association with Glow-Unique. I was actively involved in managing and growing the Glow-Unique community, with multiple posts demonstrating my contributions

10. Without immediate relief, I will suffer irreparable harm. Defendant's continued sales are dissipating inventory I fully paid for and depleting funds from sales of my products. This is particularly harmful during the holiday season, when sales are critical. The ongoing use of the brand and LLC name dilutes my intellectual property and confuses customers, causing lost revenue and reputational damage that cannot be adequately compensated by money damages alone. Her actions also risk further concealment or transfer of assets before resolution.

11. I have no adequate remedy at law, as monetary damages cannot fully restore my business reputation or prevent ongoing asset loss. The balance of equities favors me, as I funded and created everything, while Defendant faces only the harm of ceasing unlawful

activities. Granting the TRO serves the public interest by protecting intellectual property rights and preventing unfair competition.

12. The facts stated herein are true and correct to the best of my knowledge. I understand that any false statements may subject me to penalties for perjury.

Dated: November 17, 2025

/s/ Priscila Ferreira Priscila Ferreira