UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PRISCILA FERREIRA, d/b/a DEPRIS INC.,

    Plaintiff,

        v.

JAIMEE MUÑOZ,

    Defendant.

Civil Action No. 4:25-cv-40195-MRG

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT**

Defendant Jaimee Muñoz respectfully moves this Court to dismiss Plaintiff Priscilla Ferreira's Complaint in its entirety for lack of subject matter jurisdiction, failure to state a claim, and failure to comply with the basic pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure.

**FACTUAL BACKGROUND[1]**

As alleged in the Complaint, Ferreira is an individual residing in Massachusetts who is "doing business as" DePris Inc., a Wyoming corporation with its principal place of business in Massachusetts.[2] Compl. ¶ 2. Muñoz is an individual residing in North Carolina. *Id.* ¶ 3.

---

[1] Muñoz disputes Ferreira's allegations but recites them as pleaded in the Complaint for the limited purpose of this Motion to Dismiss.

[2] An individual cannot "do business as" a separate legal entity such as a corporation. Under Wyoming law, "business entities, such as corporations and LLCs, are separate and distinct from their owners." *Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 798 (Wyo. 2019). By contrast, a d/b/a or trade name is simply another way to refer to a single legal entity. *See Bauer v. Pounds*, 762 A.2d 499, 503 (Conn. 2000) ("It appears well settled that the use of a fictitious or assumed business name 'does not create a separate legal entity . . . [and that] [t]he designation [d/b/a] . . . is merely descriptive of the person or corporation who does business under some other name") (collecting cases). Insofar as Ferriera is asserting claims on behalf of DePris, Inc.,

The Complaint alleges that in April 2024, Muñoz contacted her by text message about the pricing of Muñoz's products, and that this led to an "informal 50/50 partnership with a third party (Jenny) for a Discord community called SBB." *Id.* ¶ 7. It is not clear from the Complaint whether this 50/50 partnership was between Muñoz and Jenny, between Ferreira and Jenny, or somehow involved a "50/50" split between Muñoz, Ferreira, *and* Jenny, and the Complaint's reference to Exhibit A—an undated, two-page text message exchange allegedly between Ferreira and Muñoz—does not clarify this point. *Id.* ¶ 7 & Ex. A.

The Complaint further alleges that in late 2024, "conflicts arose" (although the Complaint does not make clear between whom) and that Jenny felt overburdened, leading to a revised profit split of 80/20 in Jenny's favor (although, again, the Complaint does not explain who was involved in this alleged transaction). *Id.* ¶ 8. The Complaint next alleges that Muñoz frequently traveled to Mexico, leaving Ferreira to "manage operations," although it is not clear what operations Ferreira is referring to. *Id.*

The Complaint alleges that between December 2024 and March 2025, Ferreira formed a new partnership with Deborah Lecours, "but Defendant continued unauthorized activities." *Id.* ¶ 9. The Complaint does not explain what these supposed "unauthorized activities" were, when they began, or how (if at all) they relate to Ferreira's partnership with Lecours or the prior-referenced partnership with Jenny. *Id.*

The Complaint then alleges that Ferreira "solely funded and created Glow-Unique assets," in an amount of more than $50,335. *Id.* ¶ 10. The Complaint does not make clear what "Glow-Unique" is or how (if at all) Muñoz was involved, except to state that "no formal

---

the corporation—not Ferreira individually—is the real party in interest under Fed. R. Civ. P. 17(a)(1).

operating agreement exists." *Id.* Muñoz allegedly "withheld inventory" that Ferreira paid for, removed Ferreira's access to "bank/payment processors," "misappropriated ~$60,000 in sales proceeds," and "posted defamatory statement in Discord" implying that Ferreira was "impersonating/stealing customers," although, once again, the Complaint does not provide any explanation of how or whether these allegations relate to the various alleged partnerships between Ferreira and other individuals. *Id.* ¶¶ 11-2.

Finally, the Complaint alleges that Ferriera sent Muñoz a letter on October 28, 2025, regarding her intent to initiate legal proceedings, and that Ferriera's counsel sent Muñoz a cease-and-desist letter on November 2, 2025, requesting that she "cease and desist from all unauthorized activities related to the Glow-Unique brand, including but not limited to the use of its name, logo, tagline, creative materials, and the sale or disposition of associated products and inventory." *Id.* ¶ 13 & Ex. I. The Complaint alleges that despite these letters, Muñoz "continues side sales of [Ferreira's] inventory and builds a new site under [Ferriera's] original LLC paperwork." *Id.* ¶ 13. It is not clear from the Complaint what alleged LLC is being referred to. *Id.*

Based on these allegations, Ferriera asserts six counts: (1) unregistered trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a); (2) defamation; (3) breach of fiduciary duty; (4) conversion/misappropriation; (5) unfair competition under Mass. Gen. Laws ch. 93A; and (6) unjust enrichment. *Id.* ¶¶ 14-19.

## ARGUMENT

**A.     The Court Lacks Subject Matter Jurisdiction Over This Action**

On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quoting *Murphy v. United States*, 45 F.3d 520, 522 (1st

Cir. 1995)). If the party seeking to invoke federal jurisdiction "fails to demonstrate a basis for jurisdiction," the motion to dismiss must be granted. *Id.*

Here, Ferreira invokes both federal question jurisdiction under 28 U.S.C. § 1331 (based on her Lanham Act claim) and diversity jurisdiction under 28 U.S.C. § 1332. Compl. ¶ 4. Because neither basis for this Court's jurisdiction exists, dismissal is warranted.

1.  <u>Because Ferreira fails to adequately allege a federal claim, this Court lacks federal question jurisdiction</u>

Ferreira's sole federal claim—trademark infringement under the Lanham Act—fails as a matter of law, thereby divesting this Court of federal question jurisdiction. In her Complaint, Ferreira invokes 15 U.S.C. § 1125(a), which creates a federal cause of action for trademark infringement. *See* Compl. ¶ 14. But what is notably missing from the Complaint are allegations sufficient to establish *any* of the elements of such a claim.

To state a claim of trademark infringement under the Lanham Act, a plaintiff must allege that (1) she owns and uses a valid and legally protectable trademark; (2) the defendant used a similar or identical mark without permission; and (3) the defendant's use of the mark is likely to cause consumer confusion. *See Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 60 (1st Cir. 2008); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006). As to validity, while "both registered and unregistered trademarks may be eligible for protection against infringing uses[,] . . . [w]hen a party seeks protection for an unregistered trademark, it is incumbent on that party to demonstrate affirmatively that its mark is distinctive." *Borinquen Biscuit*, 443 F.3d at 117. As to confusion, the Court is required to assess eight criteria: "the similarity of the marks; the similarity of the goods; the relationship between the parties' channels of trade; the relationship between the parties' advertising; the classes of prospective purchasers; evidence of actual confusion; defendant's intent in adopting its mark; and the

4

strength of the plaintiff's mark." *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 10 n. 6 (1st Cir. 2008) (quoting *Pignons S.A. de Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487 (1st Cir. 1981)).

      Here, the Complaint does not even clearly identify the mark allegedly at issue. At best, the Complaint states that Ferreira "created Glow-Unique assets," Compl. ¶ 10, and that Muñoz's "unauthorized use of Glow-Unique in interstate commerce causes confusion," *id.* ¶ 14. But the Complaint fails to allege that "Glow-Unique" is used as a trademark (as opposed to a business name), what goods or services it identifies, or how it is used in commerce to identify the source of those goods or services. In addition, the Complaint contains no factual allegations establishing that "Glow-Unique" is inherently distinctive or has acquired secondary meaning sufficient to warrant common law trademark protection. *See Borinquen Biscuit*, 443 F.3d at 117. Instead, the Complaint asserts in conclusory fashion that Muñoz's "unauthorized use of Glow-Unique" infringes Ferreira's "common law trademark rights based on prior use and distinctiveness." Compl. ¶ 14. The Court should not credit such "conclusory legal allegations." *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022).

      The Complaint's failure to plead likelihood of confusion is equally fatal. Ferreira offers not a single factual allegation addressing any of the eight *Pignons/Boston Duck Tours* factors. Instead, she simply asserts that Muñoz's "unauthorized use . . . causes confusion." Compl. ¶ 14. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      Where Ferreira has failed to plead a plausible claim under the Lanham Act, Count 1 must be dismissed, and this Court consequently lacks federal question jurisdiction over this matter.

    2.    <u>Because Ferreira fails to adequately allege the requisite amount in controversy under 28 U.S.C. § 1332, this Court has no diversity jurisdiction</u>

This Court also lacks diversity jurisdiction where Ferreira's Complaint contains no more than vague and conclusory allegations of damages above the $75,000 amount-in-controversy threshold required under 28 U.S.C. § 1332(a).

A plaintiff invoking diversity jurisdiction bears the burden of establishing that her claims satisfy the threshold amount in controversy. *See, e.g.*, *Andersen v. Vagaro*, 57 F.4th 11, 14 (1st Cir. 2023); *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012). The sum that is pleaded may control "if apparently made in good faith." *Andersen*, 57 F.4th at 14-15. However, crediting a plaintiff's good faith claims does not amount to "blindly 'accept[ing] every claim of damages at face value.'" *Andersen*, 57 F.4th at 16 (citing *Abdel-Aleem*, 665 F.3d at 43). The plaintiff must present facts with "sufficient particularity that in some way support the contention that there is more than $75,000 at stake." *Id.* at 15.

Here, Ferreira alleges that her damages "exceed[] $150,000." Compl., Prayer for Relief. But the factual allegations do not support such a figure or explain how Ferreira reached it. Rather, the only dollar figure alleged in the Complaint—the allegation that Muñoz "misappropriated ~$60,000 in sales proceeds," Compl. ¶ 11—is below the jurisdictional threshold. Thus, without more support, it is unclear how Ferreira's damages could reach $75,000, let alone $150,000.

Because the Complaint lacks factual allegations sufficient to satisfy the amount-in-controversy requirement under 28 U.S.C. § 1332(a), this Court has no diversity jurisdiction and should dismiss this matter for lack of subject matter jurisdiction.

B. **The Complaint Fails to State a Claim**

Even if this Court finds that it has subject matter jurisdiction over this action—which it should not—the Court should nevertheless dismiss the Complaint for failure to state a claim.

1. Count 1: Unregistered Trademark Infringement (Lanham Act, 15 U.S.C. § 1125(a))

In Count 1, Ferreira alleges that Muñoz infringed an unregistered trademark in violation of the Lanham Act. Compl. ¶ 14. As discussed in detail above, Ferreira has failed to state a claim for trademark infringement.

2. Count 2: Defamation (Libel Per Se)

In Count 2, Ferreira alleges that Muñoz's "false Discord statements" harmed Ferreira's business reputation. The Complaint does not identify any specific statements but, instead, directs the reader to a screenshot that includes the following highlighted statements by a user identified only as @Mrsjmuñoz:

- "I am very anti drama. I understand there is some upset feelings and although I can't discuss I understand the need to vent so we can heal and move on as a community stronger."

- "Great questions! I completely understand your concern. The email you received was not from us, but from [Ferreira], a former team member who is no longer affiliated with Glow Unique in any way.

    Unfortunately, she has complete access to our former website and email list as they were connected. At this time, there's no indication that any private payment information was accessed as that is handled with the CC company directly. We're taking this very seriously and will update everyone as soon as we know more.

    In the meantime, please disregard and report any email or messages claiming to represent Glow Unique that don't come from our official channels.

    Thank you for your patience and understanding while we work through this."

Compl., Ex. G. Assuming that these are the statements at issue in Count 2, the Complaint does not adequately allege that either is defamatory.

7

To state a claim of defamation under Massachusetts law, a plaintiff must show (1) the existence of a publication, (2) that the publication was concerning the plaintiff, (3) falsity of the publication, (4) that the defendant was at fault for the publication, (5) the capability of the publication to damage the plaintiff's reputation in the community, and (6) that the publication caused economic loss or is actionable without proof of economic loss. *See Stanton v. Metro Corp.*, 438 F.3d 119, 124 (1st Cir. 2006); *White v. Blue Cross & Blue Shield of Mass., Inc.*, 442 Mass. 64, 66 (2004).

As an initial matter, the Complaint does not allege that @Mrsjmuñoz is in fact Muñoz. Even assuming that Muñoz did make these statements, however, the first contains no factual assertions about Ferreira whatsoever and therefore cannot constitute defamation. *Id.* The Complaint further fails to identify what is false about the statements or to plead facts demonstrating falsity. *See* Compl. ¶¶ 12, 15. The only allegations in the Complaint relating to defamation are the conclusory statements that "Defendant posted defamatory statements in Discord implying Plaintiff was impersonating/stealing customers"—which is not supported by the text of the statements—and that "Defendant's false Discord statements harmed Plaintiff's business reputation." *Id.* These are, again, "conclusory legal allegations" that the Court ought not credit. *Legal Sea Foods*, 36 F.4th at 33.

3. <u>Count 3: Breach of Fiduciary Duty</u>

In Count 3, Ferreira alleges that Muñoz breached fiduciary duties by "misappropriating assets/funds." Compl. ¶ 16. To state a claim of breach of fiduciary duty, a plaintiff must plead (1) the existence of a fiduciary duty arising from a relationship between the parties, (2) a breach of that duty, (3) damages, and (4) causation. *See Pearson v. United States*, 831 F. Supp. 2d 514, 519 (D. Mass. 2011) (citing *Hanover Ins. Co. v. Sutton*, 46 Mass. App. Ct. 153, 164 (1999)).

8

Beginning with the existence of a fiduciary duty, the Complaint's timeline and allegations are internally contradictory regarding whether and when any fiduciary relationship existed and between whom. According to the Complaint, in April 2024, after Ferreira contacted Muñoz about pricing for Muñoz's products, "an informal 50/50 partnership with a third party (Jenny)" resulted. Compl. ¶ 7. It is not clear from the Complaint who was involved in this partnership other than Jenny. The Complaint then alleges that in late 2024 "conflicts arose" and the "profit split was revised . . . in Jenny's favor," but it remains unclear who other than Jenny was involved in this informal business relationship. *Id.* ¶ 8. In "December 2024-March 2025," Ferreira then allegedly formed a new partnership with Lecours. *Id.* at ¶ 9. The Complaint does not clarify whether a business relationship between Ferreira and Muñoz ever existed or, if it did, whether it continued after Ferreira began her partnership with Lecours. Finally, the Complaint alleges that Ferreira "solely funded and created Glow-Unique," refuting the existence of a partnership between Ferreira and Muñoz related to Glow-Unique. *Id.* ¶ 10. The allegations suggest, at most, a series of informal, evolving business arrangements between Ferreira and third parties, not between Ferriera and Muñoz. Where the Complaint does not adequately allege the existence of a fiduciary relationship between Ferriera and Muñoz, it also fails to allege the existence of any fiduciary duty owed by Muñoz to Ferreira. *See, e.g.*, *Colella v. Children's Hosp. Corp.*, 2014 WL 12581775, at *4 (D. Mass. Nov. 4, 2014) (dismissing breach-of-fiduciary-duty claim where plaintiff "fail[ed] to set forth sufficient facts establishing the existence of a fiduciary relationship").

The Complaint also fails to provide any specificity regarding what fiduciary duties Muñoz owed Ferreira and how Muñoz's conduct breached those duties. Read generously, the Complaint alleges that Muñoz "withheld inventory" that Ferreira paid for, removed Ferreira's

9

access to "bank/payment processors," and "misappropriated ~$60,000 in sales proceeds," but it is, again, wholly unclear from the Complaint how these alleged misdeeds relate to any business relationship between the parties. *See* Compl. ¶ 10.

Because Ferreira fails to state a claim for breach of fiduciary duty, Count III must be dismissed.

4. Count 4: Conversion/Misappropriation

In Count 4, Ferreira brings a claim for conversion/misappropriation. "A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused." *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir.1993).

The sum-total of the allegations in the Complaint related to this claim are that Muñoz "withheld inventory [Ferreira] paid for" and that she "wrongfully controls [Ferreira's] inventory and funds." *Id.* ¶¶ 11, 17. The Complaint also directs the reader to Exhibits C, D, E, and F in support of this claim, but the relevance of these exhibits is unclear. *Id.* The first exhibit appears to show a shipment from HEALINK CO., LTD, and it lists the buyer as Ferreira and the consignees as Ferreira and Muñoz. *Id.*, Ex. C. The second shows tracking information for another shipment but contains no information about the parties involved in the transaction. *Id.*, Ex. D. The third appears to show a payment from a Bank of America account with the user information "info@deprisinc.com" to an account with the user information "info@glow-unique.com." *Id.*, Ex. E. It is unclear how these accounts relate to the parties in this case. Finally, the fourth

appears to show a payment from "info@deprisinc.com" to Jaimee Munoz. *Id.*, Ex. F. The Complaint makes no attempt to explain how, if at all, these exhibits relate to Ferreira's conversion claim, and it certainly does not establish that Ferriera had an ownership interest in any specific items or that Muñoz's retention of any such items was wrongful.

Where Ferreira has failed to allege any of the elements of her conversion claim, Count 4 fails as a matter of law.

5.  Count 5: Unfair Competition (Mass. Gen. Laws ch. 93A)

In Count 5, Ferreira alleges that "[Muñoz]'s deceptive acts in trade/commerce harmed [Ferreira]," in violation of Mass. Gen. Laws ch. 93A. *Id.* ¶ 18. To state a claim under ch. 93A, a plaintiff must allege facts sufficient to establish four elements:

> first, that the defendant has committed an unfair or deceptive act or practice; second, that the unfair or deceptive act or practice occurred 'in the conduct of any trade or commerce;' third, that the plaintiff suffered an injury; and fourth, that the defendant's unfair or deceptive conduct was a cause of the injury.

*Rafferty v. Merck & Co., Inc.*, 479 Mass. 141, 161 (2018). In determining whether an act is "unfair" within the meaning of the statute, courts consider "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers. . . ." *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596 (1975)). An act is "deceptive" for these purposes "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." *Lowell Gas Co. v. Att'y Gen.*, 377 Mass. 37, 51 (1979). Specifically, for an act to be deceptive, "(1) there must be a representation, practice, or omission likely to mislead consumers; (2) the consumers must be interpreting the message reasonably under the circumstances; and (3)

11

the misleading effects must be 'material,' that is likely to affect consumers' conduct or decision with regard to a product." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 72 (1st Cir. 2020) (internal citation omitted). Additionally, because a claim of deception involves fraud, "Rule 9(b) requires that plaintiff 'to specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the intentional misrepresentation and Chapter 93A claims." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 462 (D. Mass. 2018) (quoting *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017)).

Here, beyond conclusory allegations that "[Muñoz]'s deceptive acts in trade/commerce harmed [Ferreira]," the Complaint provides no factual allegations identifying what specific acts were "deceptive," how those acts were deceptive, when the alleged deceptive acts occurred, or what injury resulted specifically from unfair or deceptive conduct. Indeed, the Complaint does not allege facts sufficient to establish *any* element of Ferreira's ch. 93A claim, much less to satisfy Rule 9(b)'s heightened pleading standard. Moreover, insofar as this claim is related to some kind of alleged partnership between Ferreira and Muñoz, *see* Compl. ¶¶ 7-9, "disputes between parties in the same venture do not fall within the scope of G.L. c. 93A, § 11," *Szalla v. Locke*, 421 Mass. 448, 452 (1995) (collecting cases illustrating this principle). Count 5 must therefore be dismissed for failure to state a claim.

6.   Count 6: Unjust Enrichment

Finally, in Count 6, Ferreira alleges that "[Muñoz] unjustly benefited from [Ferreira]'s investments without reimbursement." Compl. ¶ 19. The Complaint contains no further allegations related to this claim but directs the reader to Exhibits B, E, and F. *Id.* Exhibit B appears to show a series of transactions from "Depris Inc." to a variety of vendors. *Id.*, Ex. B. It is entirely unclear from the Complaint what the relevance of these transactions is to Ferreira's unjust enrichment claims. Similarly, as discussed above, Exhibit E appears to show a payment

from a Bank of America account with the user information "info@deprisinc.com" to an account with the user information "info@glow-unique.com," with no explanation of how these accounts relate to the parties, while Exhibit F appears to show a payment from "info@deprisinc.com" to Jaimee Munoz. *Id.*, Ex. E-F.

Under Massachusetts law, unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005). To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009). Where the Complaint includes no factual allegations whatsoever in support of this claim, it must be dismissed.

C.   **The Complaint Fails to Comply with Rule 8.**

Rule 8(a)(1) of the Federal Rules of Civil procedure provides that a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Rule 8(d)(1) states that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(e). Read together, Rules 8(a)(1) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1217 (4th ed. 2024)

Ferreira's Complaint is a confusing jumble of allegations and legal conclusions that lacks any intelligible structure related to the facts alleged. As detailed above, the Complaint leaves Muñoz with little idea of what relationship she is alleged to have had with Ferreira and even less

sense of what she is alleged to have done wrong. The Federal Rules require more from plaintiffs, and the Complaint should be dismissed on this additional ground.

## CONCLUSION

For all the foregoing reasons, Munoz's Motion to Dismiss should be granted, and this Court should issue an Order dismissing Ferreira's Complaint with prejudice.

Respectfully submitted,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Daniel J. Cloherty (BBO #565772)
dcloherty@aarnold.org
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

Dated: December 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was served electronically upon all counsel of record filing through the ECF system on December 29, 2025.

*/s/ Alexandra Arnold*
Alexandra Arnold