UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PRISCILA FERREIRA, d/b/a DEPRIS INC.,

    Plaintiff,

        v.

JAIMEE MUÑOZ,

    Defendant.

Civil Action No. 4:25-cv-40195-MRG

---

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Defendant Jaimee Muñoz respectfully moves this Court to deny Plaintiff Priscilla Ferreira's Motion for Temporary Restraining Order and Preliminary Injunction, Dkt. No. 3. For the reasons discussed below and in Muñoz's Memorandum in support of her Motion to Dismiss the Complaint, Ferreira cannot demonstrate a likelihood of success on the merits and cannot show irreparable harm.

**RELEVANT FACTUAL BACKGROUND**

The allegations in the Complaint are discussed in detail in Muñoz's Memorandum in support of her contemporaneously filed Motion to Dismiss the Complaint. *See* Dkt. Nos. 11-12.

In addition to those allegations, Muñoz states that she first met Ferreira several years ago through online skincare communities on Discord, which is an online community platform. *See* Declaration of Jamiee Muñoz ("Muñoz Decl.") at ¶¶ 3, 5.

In or around 2024, Muñoz operated Discord servers called "SBB" and "SBB Limited" with Yennidey Gomez. *Id.* ¶ 6. Both servers related to Korean skincare products, or "K-beauty," and Gomez and Muñoz sold K-beauty products to the online communities on those servers. *Id.* In or around April 2025, Gomez and Muñoz ended their business relationship. *Id.* ¶ 7. Gomez

retained ownership of the SBB server, and Muñoz took over as the sole owner of the SBB Limited server, which she rebranded as Glow-Unique. *Id.* Ferreira's statement in her declaration that she "alone directed customers and community members" to the Glow-Unique Discord server between December 2024 and March 2025, *see* Dkt. No. 3-3, ¶ 5, is untrue, as the Glow-Unique brand did not exist until April 2025. Muñoz Decl. ¶ 8. Nor was Ferreira in any way involved with SBB or SBB Limited, other than as part of the Discord communities. *Id.*

Ferreira's statement in her declaration that she "solely created and funded the Glow-Unique brand assets," *see* Dkt. No. 3-3, ¶ 6, is also false. Muñoz Decl. ¶ 14. On July 8, 2025, Muñoz purchased the domain "glow-unique.com." *Id.* ¶ 9 & Ex. A. On July 30, 2025, Muñoz formed a limited liability company, Glow-Unique LLC, organized under Georgia law. *Id.* ¶ 10 & Ex. B. Because Ferreira had prior experience forming companies, she assisted Muñoz by connecting her with a business formation service, InCorp Services, Inc. ("InCorp"), which filed the paperwork to register Glow-Unique, LLC. *Id.* ¶ 11 & Ex. C. However, Muñoz is the sole member of Glow-Unique, LLC; Ferreira is not, nor has she ever been, a member of Glow-Unique, LLC. *Id.* ¶ 12 & Ex. B. Moreover, contrary to Ferreira's statement in her declaration that she has "not been reimbursed" for the cost of filing the Glow-Unique, LLC registration paperwork, Muñoz, not Ferreira, paid InCorp for their services related to registering Glow-Unique, LLC. *Id.* ¶ 12 & Ex. C. In September 2025, Muñoz opened a bank account for Glow-Unique LLC. *Id.* ¶ 13 & Ex. D. Muñoz is the sole owner of the bank account for Glow-Unique LLC.  *Id.*

Ferreira's declaration states that she "invested over $50,335" in products in the Glow-Unique business. Dkt. No. 3-3, ¶ 6. That is also false. Muñoz Decl. ¶ 15. In July 2025, Deborah Lecours, with whom Ferreira operates DePris, Inc., attempted to end her business relationship with Ferreira. *Id.* In retaliation, Ferriera sent Muñoz and/or her shipper, Haley Orsak, inventory that belonged to Lecours and/or DePris, Inc., without clear invoices or itemization. *Id.* The

products that Ferreira sent to Muñoz and Orsak are boxed and separated, as Muñoz did not know

what to do with them, and Ferreira has repeatedly stated to Muñoz that she does not want them

back, despite Muñoz's attempts to return them prior to Ferreira's initiation of this litigationp. *Id.*

Muñoz denies that she ever made any defamatory statements about Ferreira. *Id.* ¶ 16.

## ARGUMENT

The issuance of a temporary restraining order or preliminary injunction is an

"extraordinary remedy" that shall enter only if a plaintiff makes a clear showing of entitlement to

such relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In evaluating a

motion for a temporary restraining order or preliminary injunction, the court considers four

factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Esso Standard Oil Co. v. Monroig–Zayas*, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting *Bl(a)ck*

*Tea Soc'y v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004)); *see also Bourgoin v. Sebelius*, 928

F.Supp.2d 258, 267 (D. Me. 2013) (standard for issuing temporary restraining order is "the same

as for a preliminary injunction").

The first factor is the most important: if the moving party cannot demonstrate a likelihood

of success on the merits, "the remaining become matters of idle curiosity." *New Comm Wireless*

*Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). "To demonstrate likelihood of

success on the merits, plaintiffs must show 'more than mere possibility' of success—rather, they

must establish a 'strong likelihood' that they will ultimately prevail." *Sindicato Puertorriqueño*

*de Trabajadores v. Fortuño*, 699 F.3d 1, 10 (1st Cir. 2012) (quoting *Respect Maine PAC v.*

*McKee*, 622 F.3d 13, 15 (1st Cir. 2010)).

A.      <u>**Ferreira Cannot Show a Likelihood of Success on the Merits**</u>

Ferreira's Motion for Temporary Restraining Order and Preliminary Injunction rests on the same Complaint that Muñoz has moved to dismiss in its entirety for lack of subject-matter jurisdiction, failure to state a claim, and failure to comply with Rule 8 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 12. For the same reasons that this Court should dismiss the Complaint, Ferreira cannot show a likelihood of success on the merits. *Id.*

Without repeating all the arguments in the Memorandum in support of her Motion to Dismiss, which Muñoz incorporates here, Ferreira first cannot succeed in showing a likelihood of success on the merits where this Court lacks subject matter jurisdiction over this action. *Id.* at 6. As to federal question jurisdiction, Ferreira's sole federal claim—trademark infringement under the Lanham Act—fails as a matter of law. *Id.* at 4-5. As discussed in Muñoz's Memorandum in Support of Motion to Dismiss, Ferreira's Complaint fails to establish any of the elements of her claim, where it does not even identify the mark allegedly at issue, contains no factual allegations establishing that "Glow-Unique" is inherently distinctive or has acquired secondary meaning sufficient to warrant common law trademark protection, and fails to plead likelihood of confusion. *Id.* As to diversity jurisdiction, the Complaint contains no more than vague and conclusory allegations of damages above the $75,000 amount-in-controversy threshold required under 28 U.S.C. § 1332(a). *Id.* at 6. Although Ferreira alleges that her damages "exceed[] $150,000," Compl., Prayer for Relief, the factual allegations do not support such a figure or explain how Ferreira reached it. Dkt. No. 12 at 6. Rather, the only dollar figure alleged in the Complaint—the allegation that Muñoz "misappropriated ~$60,000 in sales proceeds," Compl. ¶ 11—is below the jurisdictional threshold. Dkt. No. 12 at 6. Without more

support, it is unclear how Ferreira's damages could reach $75,000, let alone $150,000, and this Court accordingly lacks jurisdiction over this action.

Moreover, even if this Court finds that it has subject matter jurisdiction over this action—which it should not—Ferreira has failed to adequately plead any of her claims. Dkt. No. 12 at 7-13. Broadly, Ferreira has failed to support her claims with factual allegations, relying largely on conclusory legal allegations, such as that "Defendant's false Discord statements harmed Plaintiff's business reputation." *Id.* at 8. In addition, many of the allegations are confusing or nonsensical, such as Ferreira's allegations regarding her alleged business relationship with Muñoz. *Id.* at 9. Indeed, it is entirely unclear from the Complaint whether Ferreira even alleges that such a relationship existed. *Id.* The Complaint also attaches a number of exhibits but makes no effort to explain how, if at all, these exhibits relate to her claims. *See, e.g.*, *id.* at 10-11, 12-13. Where Ferreira has not stated any claim on which relief can be granted, she has no likelihood of success on the merits.

The additional facts that Ferreira sets forth in her Declaration do not change this analysis, and many are verifiably false. Specifically, Ferreira claims that she "solely created and funded the Glow-Unique brand assets." Dkt. No. 3-3, ¶ 6. But as Muñoz's Declaration and accompanying exhibits make clear, that is untrue. Muñoz Decl. ¶¶ 9-14. Although Ferreira assisted Muñoz in registering Glow-Unique, LLC, as the emails attached to Muñoz's Declaration—which bear the subject line "Registering a S Corp for my friend"—and the Articles of Organization make clear, Ferreira is not a member of Glow-Unique, LLC, and Muñoz, not Ferreira, paid the costs of registration. *Id.* ¶¶ 10-11 & Exs. B, C. Muñoz also purchased and paid for the "glow-unique.com" domain and is the sole owner of the Glow Unique Discord server and the Glow-Unique LLC bank account. *Id.* ¶¶ 9, 13 & Exs. A, D. Ferreira is effectively asking this

Court to enjoin operations of Glow-Unique, LLC, *see* Dkt. No. 3-2, yet Ferreira has not shown

that she has *any actual interest* in Glow-Unique, LLC.

Ferreira's statement that she "invested over $50,335" in products in the Glow-Unique

business is also false. *Id.* ¶ 15. Rather, after the breakdown of a business relationship between

Ferreira and her partner, Deborah Lecours, Ferreira sent Muñoz inventory that belonged to

Lecours and her business, DePris, Inc. *Id.* Muñoz did not want or request that inventory and has

kept it boxed and separate, as she does not know what to do with it. *Id.* Muñoz has offered to

return the inventory to Ferreira, but Ferreira has repeatedly told her that she does not want it. *Id.*

Where Ferreira has not shown a likelihood of success on the merits, her motion must be

denied.

**B.       Ferreira Cannot Show Irreparable Harm**

Ferreira's also cannot show irreparable harm. Indeed, her entire argument as to

irreparable harm is as follows:

> **B. Plaintiff Will Suffer Irreparable Harm** Ongoing sales dissipate inventory and funds
> (Exhibits D, E); brand dilution and reputational damage are presumed irreparable in IP
> cases (*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12 (1st Cir. 1996)).
> Holiday timing exacerbates losses.

Dkt. No. 3-1 at 3. Insofar as this is an argument at all, none of the supposed bases of irreparable

harm support granting a preliminary injunction. First, Ferreira's core alleged injuries appear to be

monetary, such as claimed "hard costs" and alleged inventory value. *See* Dkt. No. 3-3, ¶¶ 6-7.

Such injuries—insofar as they exist—are measurable and compensable through monetary

damages and therefore do not constitute irreparable harm warranting preliminary relief. *See*

*Suero v. Fed. Home Loan Mortg. Corp.*, No. 13-cv-13014, 2013 WL 6709001, at \*7 (D. Mass.

Dec. 17, 2013) (quoting *Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co.*, 399 Mass.

640 (1987)) ("economic loss alone does not usually rise to the level of irreparable harm which a

party must establish to obtain a preliminary injunction"). Second, Ferreira's "brand dilution" theory depends on an ownership interest that she has not established and that, as Muñoz's declaration and exhibits make clear, is contrary to reality. Where Ferreira has not shown that she owns the Glow-Unique mark or has the right to exclude Muñoz from using it, she has not shown irreparable harm.

## C.    <u>The Balance of the Equities Strongly Favors Denial</u>

Ferreira's requested relief—that Muñoz be "enjoined from using the Glow-Unique name, logo, or assets; operating under the brand; selling or profiting from [Ferreira's] inventory; accessing or transferring from the bank account; and making defamatory statements," Dkt. No. 3-2—would effectively strip Muñoz of control over her own business and operations on a slim emergency record, despite Muñoz's testimony and evidence demonstrating that *she*, not Ferreira, is the sole member of Glow-Unique, LLC. That is not "preserving the status quo," *see CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc.*, 48 F.3d 618, 620 (1st Cir. 1995) ("The purpose of a preliminary injunction is to preserve the status quo, freezing an existing situation so as to permit the trial court, upon full adjudication of the case's merits, more effectively to remedy discerned wrongs"); it is awarding Ferreira control over a business that does not belong to her before the Court has adjudicated ownership. Because that would tip the standard on its head, this Court should deny Ferreira's motion.

## CONCLUSION

For all the foregoing reasons, and those in Munoz's Memorandum in support of her Motion to Dismiss should be granted, this Court should deny Ferreira's Motion for Temporary Restraining Order and Preliminary Injunction.

7

Respectfully submitted,

*/s/ Alexandra Arnold*
Alexandra Arnold (BBO #706208)
aarnold@clohertysteinberg.com
Daniel J. Cloherty (BBO #565772)
dcloherty@aarnold.org
CLOHERTY & STEINBERG LLP
One Financial Center, Suite 1120
Boston, MA 02111
617-481-0160

Dated: December 29, 2025

## CERTIFICATE OF SERVICE

I hereby certify that this document was served electronically upon all counsel of record

filing through the ECF system on December 29, 2025.

*/s/ Alexandra Arnold*
Alexandra Arnold